NO. 5:20-CT-3252-FL

| | | |
|---|---|---|
| VICTOR CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SGT. DWIGHT JOHNSON, | ) | |
| OFC. CATHERINE DEAN, | ) | |
| SGT. CHARLES K. BARBOUR, | ) | |
| OFC. BUTCH HALPRIN, and | ) | |
| LT. ANGIE HINSON, | ) | |
| | ) | |
| Defendants.[1] | ) | |
| -- | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Interested Party. | ) | |

This matter is before the court on defendants' supplemental motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 78). Plaintiff responded in opposition to defendants' supplemental motion and defendants replied in further support of their motion. In this posture, the issues raised are ripe for ruling.[2]

## STATEMENT OF THE CASE

Plaintiff, a federal inmate proceeding pro se, commenced this action by filing complaint August 10, 2020, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff challenges his prosecution on sex trafficking charges and asserts claims for unlawful

---

[1] The court dismissed formerly named defendant Dunn Police Department by separate order entered May 14, 2021.

[2] This matter originally proceeded before United States District Judge Terrence W. Boyle and was reassigned to the undersigned United States District Judge on August 20, 2025.

search, false arrest, false imprisonment, excessive bail, and malicious prosecution under the Fourth, Fifth, and Eighth Amendments to the United States Constitution. By order entered August 21, 2021, the United States was allowed to intervene in the proceedings, and the case was stayed pending resolution of plaintiff's criminal proceedings. The case was reinstated October 13, 2022, after judgment was entered into plaintiff's criminal case.

During the initial round of dispositive motions, the court granted defendants' first motion for summary judgment and plaintiff's claims were dismissed as barred under Heck v. Humphrey, 512 U.S. 477 (1994). Plaintiff appealed, and on May 6, 2025, the United States Court of Appeals for the Fourth Circuit affirmed dismissal of plaintiff's malicious prosecution claim but remanded the case for further proceedings as to plaintiff's remaining claims.

On remand, the court vacated the judgment in pertinent part, and defendants were directed to file a supplemental motion for summary judgment addressing plaintiff's remaining claims. Defendants filed the instant supplemental motion August 14, 2025, arguing plaintiff's claims are barred by Heck. Alternatively, defendants argue plaintiff's claims fail as a matter of law and defendants are entitled to qualified immunity. In support, defendants rely upon a statement of material facts and appendix of exhibits comprising the following: 1) transcript from March 13, 2020, hearing in United States v. Clayton, No. 2:18-CR-524 (E.D. Pa.); 2) Harnett County documentation from criminal file 18 CR 50891; 3) grand jury indictment in Clayton, No. 2:18-CR-524; 4) guilty plea agreement and criminal judgment in Clayton, No. 2:18-CR-524; and 5) transcript from November 16, 2021, plea hearing in Clayton, No. 2:18-CR-524. Plaintiff responded in opposition to defendants' supplemental motion for summary judgment relying upon a memorandum of law and statement of material facts. Defendants replied in further support of their motion.

## STATEMENT OF FACTS

Except as otherwise noted below, the facts in the light most favorable to plaintiff are as follows. On March 15, 2018, Sergeant Calvin Johnson ("Johnson") and Officer Megan Dean ("Dean") of the Dunn Police Department received requests to report to the Baymont Inn and Suites, a two-story motel in Dunn, North Carolina. (Defs' SOMF (DE 79) ¶¶ 1–2). Dean and Johnson were advised there was a missing juvenile at the motel, as well as potential solicitation and drug activity. (See id.). Plaintiff avers there were no reports of alleged criminal activity, and the dispatched call was for a missing person. (See Pl.'s SOMF (DE 89) ¶¶ 1–2, 12).

When Dean and Johnson arrived at the motel, they found a girl ("Minor 1") sitting on the stairway who appeared to be about fourteen to sixteen years old. (See Defs' SOMF ¶ 3). Minor 1 informed the officers that she was a runaway and had been staying in room 214 with another missing girl ("Minor 2") and a male. (See id.). Minor 1 also informed the officers that she and Minor 2 were being prostituted and that the man and Minor 2 were in the room. (See id. ¶ 4). Once the officers finished speaking with Minor 1, they placed her in Johnson's patrol car and confirmed through the National Crime Information Center that she was in fact a missing juvenile. (See id.). Dean and Johnson then proceeded to room 214. (See id.).

When Dean and Johnson entered room 214, they saw two beds and noticed Minor 2 and plaintiff were in one of the beds together. (See id. ¶ 5). Minor 2 appeared to be about fourteen to sixteen years old and was scantily clothed. (See id.). The officers instructed Minor 2 to get out of bed and put on more clothes. (See id.). Dean took Minor 2 to the bathroom to comply with the officers' instruction, and Johnson stayed with plaintiff. (See id.). Plaintiff alleges Dean and Johnson entered his motel room and detained him without consent, a warrant, or exigent circumstances. (See Pl.'s SOMF ¶¶ 3–6, 8–9, 13–14).

3

Dean transported one of the minors back to the Dunn Police Department. (See Defs' SOMF ¶ 6). Meanwhile, Sergeant Charles Barbour ("Barbour") of the Dunn Police Department arrived at the motel and spoke with Johnson. (See id.). Per Johnson's request, Barbour took plaintiff to his police car to be detained and sat with plaintiff in his car for approximately four hours. (See id. ¶¶ 6–7). Barbour kept plaintiff in the parking lot of the motel because the Dunn Police Department was a very small building, and he did not want to risk plaintiff running into the minors there. (See id. ¶ 7). While in the car, Barbour told plaintiff he was being detained. (See id. ¶ 8). Barbour does not recall plaintiff asking to use the restroom or taking plaintiff to the restroom. (See id.). Barbour also does not recall plaintiff asking for food or giving plaintiff food while they were in the car. (See id.). Plaintiff alleges he was held captive in Barbour's car, was questioned without being given a Miranda warning, and was not given any food or drink. (See Pl.'s SOMF ¶ 7).

While Barbour and plaintiff were at the motel, other law enforcement officers interviewed the two female minors at the Dunn Police Department. (See Defs' SOMF ¶ 9). The minors were interviewed separately and each interview lasted about 45 to 60 minutes. (See id.).

At approximately 1:15 p.m., Barbour took plaintiff to the Dunn Police Department and offered plaintiff food and drink. (See id. ¶ 10). Plaintiff accepted a bottle of water and some crackers. (See id.). Plaintiff alleges he was transported back and forth from the motel to the police department so that he could use the restroom and snack. (See Pl.'s SOMF ¶¶ 19–24). Plaintiff alleges when they returned to the motel, the officers conducted a search and seizure of his property. (See id. ¶¶ 25–26).

Barbour and FBI Special Agent Kiernan Whitworth ("Whitworth") Mirandized plaintiff at the Dunn Police station and plaintiff signed a form acknowledging his Miranda rights. (See Defs'

4

SOMF ¶ 11). After plaintiff was given his <u>Miranda</u> rights, Barbour and Whitworth interviewed plaintiff for approximately an hour. (<u>See</u> <u>id.</u> ¶¶ 11–12).

After plaintiff was interviewed, Lieutenant Angie Hinson ("Hinson") appeared before a Harnett County Magistrate Judge and obtained a warrant for plaintiff's arrest on a North Carolina state felony charge of statutory sexual offense with a child. (<u>See</u> <u>id.</u> ¶ 13). At approximately 4:00 p.m., plaintiff was formally placed under arrest and was taken to the Harnett County jail. (<u>See</u> <u>id.</u>).

On March 16, 2018, plaintiff received his first appearance before a Harnett County District Court Judge and was appointed counsel. (<u>See</u> <u>id.</u> ¶ 14). On October 24, 2018, the state law charges were dismissed with notation that plaintiff was in federal custody in Pennsylvania. (<u>See</u> <u>id.</u>). Regarding the period of state detention, plaintiff asserts he was held at the Harnett County jail for seven months on a $500,000 bail without ever being afforded a day in court. (<u>See</u> Pl.'s SOMF ¶ 29). Plaintiff further states his bail was reduced to zero after seven months without explanation and he was released to his federal detainer for a supervised release violation. (<u>See</u> <u>id.</u> ¶ 30). In addition, according to plaintiff his state charges were dismissed without explanation and he disputes that his state charges were dismissed in favor of federal prosecution. (<u>See</u> <u>id.</u> ¶ 31). Plaintiff maintains he was released from federal custody November 3, 2018, and was set free without any state or federal charges pending. (<u>See</u> <u>id.</u> ¶ 32).

On November 15, 2018, in the United States District Court for the Eastern District of Pennsylvania, a grand jury indicted plaintiff for two counts of knowingly recruiting, enticing, harboring, transporting, providing, obtaining, and maintaining Minor 1 and Minor 2, and attempting to do so, knowingly and in reckless disregard for the fact that Minor 1 and Minor 2 were under the age of 18 and would be caused to engage in commercial sex acts, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a). (<u>See</u> Defs' SOMF ¶ 15; Defs' Ex. C (DE 80-3)). The federal

indictment concerned the same criminal activity as the state charges did: plaintiff's sex trafficking and attempted sex trafficking of two minor girls, ages 15 and 16, which began in Philadelphia, Pennsylvania, and concluded in Dunn, North Carolina, culminating in plaintiff's arrest on March 15, 2018. (See Defs' SOMF ¶ 16; Defs' Ex. B (DE 80-2); Defs' Ex. C (DE 80-3)).

On September 28, 2022, plaintiff pleaded guilty to the charges in the federal indictment and was sentenced to 180 months' imprisonment on each count, to run concurrently. (See Defs' SOMF ¶ 17; Defs' Ex. D (DE 80-4)). Plaintiff is currently serving his federal sentence at Federal Correctional Institution Fort Dix in Joint Base MDL, New Jersey. (See BOP Inmate Locator, http://www.bop.gov/inmateloc/ (search by inmate number) (last visited Mar. 23, 2026).

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[3]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome

---

[3] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.     Analysis

     1.     Heck v. Humphrey, 512 U.S. 477 (1994).

Defendants argue plaintiff's claims are barred by Heck because his allegations necessarily imply the invalidity of his federal convictions. To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose

unlawfulness would render a conviction or sentence invalid, the plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck, 512 U.S. at 486–87. The Supreme Court later clarified that section 1983 actions are barred, no matter the relief sought, "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). In Wilkinson, the Court again emphasized that habeas corpus was the exclusive remedy for prisoners who "seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81–82.

Plaintiff was convicted of two counts of attempted sex trafficking of a minor and he has not shown that his convictions or sentence has been overturned or otherwise invalidated.[4] However, the Fourth Circuit has explained that there are circumstances where a section 1983 claim bearing some relationship to a valid criminal judgment might not be barred by Heck. A section 1983 claim based on an alleged unlawful search does not necessarily imply the invalidity of a conviction or sentence if "(1) the conviction derives from a guilty plea rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt." Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015). Additionally, claims for false arrest do not of themselves necessarily call into question the validity of a conviction. See Brooks v. City of Winston-Salem, 85 F.3d 178, 182 (4th Cir. 1996) ("[A] charge

---

[4] Although plaintiff's state law charges for sexual offense with a child were dismissed, his federal convictions were based on the same facts and evidence as the dismissed state charges. See Defs' Ex. B (DE 80-2); Defs' Ex. C (DE 80-3); Defs' Ex. D (DE 80-4). Thus, the dismissal of the state charges does not qualify as a favorable termination. See Simmons v. Beam, No. 4:15-cv-03401-RBH, 2016 WL 4035457, at *3 (D.S.C. July 28, 2016), aff'd, 685 F. App'x 220 (4th Cir. 2017).

8

that probable cause for a warrantless arrest was lacking, and thus that the seizure was unconstitutional, would not necessarily implicate the validity of a subsequently obtained conviction—at least in the usual case."); see also Dizzley v. Garrett, 836 F. App'x 157, 158 (4th Cir. 2021) ("A claim for false arrest . . . does not by its nature call into question the validity of a conviction."); cf. Gerstein v. Pugh, 420 U.S. 103, 119 (1975) ("[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.").

Here, although plaintiff entered a guilty plea, he asserts that he did not commit the offenses for which he was convicted. Specifically, plaintiff alleges "[a]t all relevant times this was a sham state prosecution to buy time for the FBI and fraudulent federal prosecution in an effort to develop a nonexistent case." (DE 1 at 4).[5] In his response in opposition to defendants' motion for summary judgment, plaintiff continues to state that his prosecution was a "sham" and disputes the allegations that the minors were being prostituted. (See DE 89 at 3–7). Thus, because plaintiff pleads facts inconsistent with guilt, his claim for unlawful search is barred by Heck. Cf. Covey, 777 F.3d at 197 ("Mr. Covey never contested his guilt. Nor did he ever seek to suppress the evidence underlying his conviction. Thus, relief under [section] 1983 . . . for the alleged illegal searches does not implicate the propriety of Mr. Covey's conviction, and Heck acts as no bar.").

Similarly, a finding in plaintiff's favor as to his claims for false arrest and false imprisonment would necessarily imply the invalidity of his convictions for attempted sex trafficking of minors. Plaintiff alleges defendants lacked probable cause to search his motel room

---

[5] Plaintiff did not offer any affidavits, declarations, or other competent summary judgment evidence in his response in opposition to defendants' motion for summary judgment. See (DE 89) 1–11. However, plaintiff's complaint is verified and serves as an affidavit opposing summary judgment. See (DE 1) 10; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

9

and arrest him for sex crimes concerning two minor girls. A finding that probable cause did not exist would imply the invalidity of plaintiff's convictions. Thus, plaintiff's claims for false arrest and false imprisonment are barred by Heck. See Covey, 777 F.3d at 197; see also Garcia v. Enzor, No. 3:21-01359-MGL, 2022 WL 3655236, at *2 (D.S.C. Aug. 25, 2022) (finding plaintiff's claims for false arrest and imprisonment were directly related to his conviction and a favorable determination of these claims would imply the invalidity of his conviction), aff'd, 2024 WL 1366578 (4th Cir. 2024). Accordingly, the court grants defendants' supplemental motion for summary judgment.

2. Merits of plaintiff's unlawful search, false arrest, false imprisonment claims

Defendants alternatively argue that they should be granted summary judgment because plaintiff's claims are meritless. Plaintiff's claims for unlawful search, false arrest, and false imprisonment are evaluated under the Fourth Amendment. See English v. Clarke, 90 F.4th 636, 645–46 (4th Cir. 2024); see also Manuel v. City of Joliet, Ill., 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); Smith v. Travelpiece, 31 F.4th 878, 885 (4th Cir. 2022) ("Dressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment claim.").

To prove unlawful search, false arrest, or false imprisonment, a plaintiff must demonstrate that the search or seizure was made without probable cause. See English, 90 F.4th at 645–46;

10

Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014). "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." District of Columbia v. Wesby, 583 U.S. 48, 57 (2018). Probable cause exists when "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." English, 90 F.4th at 646. "Warrants and indictments usually conclusively determine the existence of probable cause, but not when an officer deliberately supplied misleading information that influenced the judge's or grand jury's decision." English, 90 F.4th at 648; see also Gerstein, 420 U.S. at 117 n.19 ("[A]n indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause."); Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant.").

Here, probable cause existed to search plaintiff's motel room and arrest him. Officers were advised of a missing juvenile at the motel. (Defs' SOMF (DE 79) ¶¶ 1–2). When they arrived at the motel, they found Minor 1 sitting on the stairway who appeared to be about fourteen to sixteen years old. (Id. ¶ 3). Minor 1 informed the officers that she was a runaway and had been staying in room 214 with Minor 2 and a male. (See id.). Minor 1 also informed the officers that she and Minor 2 were being prostituted and that the man and Minor 2 were in the room. (See id. ¶ 4). Once the officers finished speaking with Minor 1, they placed her in a patrol car and confirmed through the National Crime Information Center that she was in fact a missing juvenile. (See id.). The officers then entered room 214 and saw Minor 2 and plaintiff in bed together. (Id. ¶¶ 4–5). Minor 2 appeared to be about fourteen to sixteen years old and was scantily clothed. (Id. ¶ 4).

11

Under these facts and circumstances, a reasonable officer would have probable cause to believe that plaintiff had committed a sexual offense with a minor. See English, 90 F.4th at 646; see also Kentucky v. King, 563 U.S. 452, 460 (2011) ("[O]fficers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."); Hunsberger v. Wood, 570 F.3d 546, 555 (4th Cir. 2009) (finding there was an exigent circumstance to enter and search a home without a warrant because there was evidence that a minor girl was in the home and a reasonable officer could conclude that prompt entry was necessary to locate the missing girl who might be in harm's way).

Additionally, a Harnett County Magistrate Judge issued an arrest warrant for plaintiff, and a federal grand jury returned an indictment for plaintiff concerning his sex trafficking and attempted sex trafficking of two minor girls culminating on March 15, 2018. (See Defs' Ex. B (DE 80-2); Defs' Ex. C (DE 80-3)). The warrant and indictment conclusively determine the existence of probable cause. See Gerstein, 420 U.S. at 117 n.19; English, 90 F.4th at 648; Porterfield, 156 F.3d at 568. To the extent plaintiff alleges defendants falsely testified that they received a dispatch about a missing juvenile, solicitation, and drug activity, the testimony plaintiff is referring to occurred during a motion to suppress hearing March 13, 2020, not when the magistrate judge issued an arrest warrant for plaintiff, or when the federal grand jury returned an indictment for plaintiff. (See DE 89 at 2, 5; DE 80-1); see also English, 90 F.4th at 648. Accordingly, the court grants defendants' motion for summary judgment.

3.      Plaintiff's excessive bail claim

The parties did not address plaintiff's Eighth Amendment claim for excessive bail. Nonetheless, the claim fails because defendants are law enforcement officers and were not responsible for setting plaintiff's bail amount. See N.C. Gen. Stat. § 7A-273 (providing that state

magistrates set bail); <u>Almond v. Kent</u>, 459 F.2d 200, 204 (4th Cir. 1972) (dismissing section 1983 claim where the sheriff was not responsible for plaintiff's bail amount); <u>see also</u> <u>Myers v. AT&T Inc.</u>, No. 5:12-CV-714-BO, 2016 WL 225671, at *5 (E.D.N.C. Jan. 19, 2016) (dismissing claim for excessive bail because defendants were not involved in the bail decision), <u>aff'd</u>, 673 F. App'x 310 (4th Cir. 2016). Accordingly, the court dismisses the claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (permitting sua sponte dismissal of claims when plaintiff proceeds in forma pauperis).

## CONCLUSION

Based on the foregoing, defendants' supplemental motion for summary judgment (DE 78) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of March, 2026.

LOUISE W. FLANAGAN
United States District Judge